[Civil No. 4582.   Filed November 8, 1943.]

[143 Pac. (2d) 332.]

## F. G. LANE and ED HAYES, co-partners, Appellants, v. S. A. GREER, Appellee.

Messrs. Sullivan & Sullivan, for Appellant Hayes.

Mr. George F. Senner, for Appellant Lane.

Mr. Tom Fulbright, for Appellee.

STANFORD, J.—This is an action brought by the appellee in the Superior Court of Pinal County. He alleges that on the 10th day of November, 1941, while he was employed by the appellants at the Pearl Mine, some nine miles from Mammoth, Pinal County, Arizona, as a laborer and a cook, he was injured through the negligence of appellants in having to use a cer-

tain miner's timbering ax with a handle which was some eight inches shorter than the usual chopping ax when he was cutting wood for purposes necessary in and about the cook house of the mine; that the handle of the said ax had a knob to prevent its slipping through the hands when used for wood cutting; that the said ax was of the approximate weight of five pounds, and being also too heavy for use for such purposes, all of which caused said ax to be dangerous to life and limb when so in use; that in the course of his employment, while obligated to use said ax for the cutting of wood, as he brought the ax down from above his head with a heavy stroke, the handle thereof slipped through the left hand of the plaintiff and the blade of said ax struck plaintiff's right toe, splitting said toe and the bone thereof to the instep.

The appellee, as plaintiff, complained that he was damaged for severe nervous shock and extreme pain; by the incurring of large expenses for hospitalization, surgical and medical attention which would continue to be incurred; by lasting injuries of such character that would prevent him from doing his accustomed work hereafter and that he had been deprived of earning his accustomed wages in the amount of $5 per day from the date of said accident; that he asked for damages in the sum of $3,500. A jury in the case returned a verdict for $1,500.

Each of the defendants herein filed separate answers. The appellant Lane, who was one of the defendants below, denied generally the allegations of the appellee's complaint, and alleged that if he was so injured that the injuries were directly and proximately caused by the sole negligence of himself; that he failed and neglected to exercise reasonable care and caution, or any care and caution whatsoever, for his own safety; that said negligence contributed to and

was the proximate cause of the injuries. And, further alleged that if the plaintiff was injured, as alleged, resulting from or contributed to by any conditions of tools or equipment, then that the plaintiff used said tools and equipment with the full knowledge of said conditions, and all risk incident thereto, and willingly and knowingly assumed the risk thereof.

The defendant Hayes denied the whole of the complaint of the appellee, and denies that the injury complained of, if any, was caused by an act or omission of defendant, Ed Hayes, or of any servant or employee of defendant, and alleges that such injury and resulting damage, if any, was the direct and proximate result of the negligence of appellee; that plaintiff neglected to use any care or caution for his own safety and that such negligence of plaintiff was the sole and proximate cause of the injury.

Appellants submitted no assignments of error, but as we see the case, the following issues are to be determined: First: Was there employment? Second: Did the injury occur while in the course of employment? Third: Was there negligence, if employed? Fourth: Was the verdict excessive?

This whole case hinges on the subject of employment. Naturally if the appellee wasn't employed, we do not need to enter into the other matters. We have given a great deal of attention to the case with the hope of upholding the verdict of the jury.

In the transcript of evidence, the evidence of this appellee is as follows:

"Q. Let us get this clear. Mr. Hayes did not hire you for this employment on the day you were hurt? A. No.

"Q. And Mr. Miranda did not hire you on that day? A. Miranda?

"Q. Yes. A. He told me he was left in charge, it was all right to go to work, he was left in charge.

"Q. What did he do, hire you that day? A. I gave him an order from Mr. Lane.

"Q. That was an order on whom? A. Beg pardon?

"Q. That was an order on whom? A. Mr. Lane gave me an order.

"Q. What did it say? A. It was to Mr. Hayes, and told him to put me back to work, and Mr. Hayes was gone, so I gave it to Miranda. . . . "

He also testified, under direct examination, as follows:

"Q. Who were operating that mine? A. Mr. Lane and Mr. Hayes.

"Q. That is these two defendants here? A. Yes, sir."

Under cross-examination, defendant Lane, who was being questioned about a certain deposition he had given in the month of March, 1942, testified as follows:

"Q. Now, going back to the same time and place in the same deposition I asked you this question: 'During the month of November, 1941, and particularly on the 10th of November, did you have in your employ a man by the name of S. A. Greet? A. I didn't know he was working there until afterwards.

" 'Q. How many other employees did you have at that mine on November 10? A. Two.' Now, did you make—were these questions asked you and did you make these answers at the time of the taking of your deposition on March 7th, 1942, in Globe? A. I believe so.

"Q. You made those answers then, those questions were asked, weren't they? A. Yes, sir.

"Q. Now, what is your answer right now: Was S. A. Greer working for you on November 10, 1941, at the Pearl Mine in Mammoth? A. On the 9th?

"Q. The 10th. A. The 10th?

"Q. Yes. A. I found out afterwards that he was."

Appellant Lane testified that when the appellee quit work at the mine several days before the 10th day

of November, that he came to Miami to get his pay, and that after he remained there a few days, he called at the grocery store of Mr. Lane, and took with him a note from Mr. Lane, directed to Mr. Hayes, as stated, saying: "Please put this man to work." Some two days thereafter the appellee arrived at the mine. In the meantime, or on the 8th day of November, appellant Hayes, the partner at the mine, had gone to Phoenix and did not return until the night of the accident, and after the accident had occurred.

Miranda, one of the Mexicans at the mine, testified that he did not put the man to work when he called at the mine, but told him to go to the camp house and wait until Mr. Hayes returned.

This court is interested in this case from the standpoint of seeing, if possible, that justice is done to a man who had been injured, and in writing the opinion we have been so extremely careful that two opinions have been written, one in his favor and one against him, but we face this condition, that we cannot be always concerned in benefiting just one person, for the laws are made for everyone, and we would have to lay down the rule, in order to say that there existed a contract of master and servant between the appellants and the appellee, that would hereafter flare in the face of this court because of the lack of evidence to support the allegation that there was that relation existing. What would have been the case had appellant Hayes brought back with him another person to work at the mine? Then, would he have employed this appellee? And, what would have been the case if appellant Hayes, upon his return from Phoenix, where he had gone when this appellee presented himself to the mine, had failed to negotiate a loan to carry on the work at the mine? Under any such circumstance would the letter from Lane compel the employment of Greer, or isn't it reasonable to believe

that since the note was directed to Hayes, that Greer should have waited until Hayes arrived before going to work?

There is no competent and substantial evidence in this case to support the theory that there was an employment of the appellee in this instance.

Accordingly the judgment is reversed.

McALISTER, C. J., and ROSS, J., concur.